**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF CWABS, INC., ASSET BACKED CERTIFICATES, SERIES 2004-2,<br><br>Plaintiff,<br><br>vs.<br><br>TOWNHOUSE SOUTH ASSOCIATION, INC. et al.,<br><br>Defendants. | 3:16-cv-00208-RCJ-VPC<br><br>**ORDER** |

This case arises from the foreclosure of a residential property pursuant to a homeowners association lien. Now pending before the Court are one offensive (ECF No. 41) and two defensive (ECF Nos. 38, 40) Motions for Summary Judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

On or about November 6, 2003, non-party Roongtum Chongolnee purchased a home located at 580 Smithridge Park, Reno, Nevada 89502 ("the Property"). (Compl. ¶¶ 7, 13, ECF No. 1.) The Deed of Trust ("DOT") identified MLSG, Inc. as the lender and beneficiary, Stewart Title as the trustee, and a secured amount of $104,310. (*Id.* at ¶ 13.) The Property is in a planned community and is subject to certain covenants, conditions, and restrictions ("CC&Rs"). By an assignment recorded on February 24, 2005, MLSG transferred its interest in the Property to

Countrywide Document Custody Services, A Division of Treasury Bank, N.A. (Assignment, ECF No. 41-1 at 27.) By an assignment recorded on October 31, 2006, the same interest was transferred to Countrywide Home Loans, Inc. (Assignment, ECF No. 41-1 at 30.) At the time of the foreclosure sale discussed below, Bank of America, N.A. was servicer of the loan. (Pl.'s Mot. Summ. J. 3, ECF No. 41.)

On March 22, 2013, Defendant E. Alan Tiras, P.C. ("Tiras")—as agent of Townhouse South Association, Inc. ("the HOA")—recorded a Notice of Default and Election to Sell against the Property, due to Chongolnee's failure to pay HOA dues. (*Id.* at ¶¶ 15–16.) On July 22, 2013, Bank of America—through its agent Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer")—requested a current HOA superpriority lien payoff demand and account ledger from Tiras. (Compl. ¶ 24; Ledger Request, ECF No. 41-1 at 48–49.) The HOA responded to the request by sending a complete owner ledger for the Property, but did not specify the amount of its superpriority lien. (Compl. ¶ 24; Owner Ledger, ECF No. 41-1 at 51–55.) Therefore, based on the $220 monthly assessments appearing throughout the ledger, Miles Bauer calculated the superpriority amount of the HOA's lien to be $1,980. (Compl. ¶ 26.) On August 9, 2012, Miles Bauer tendered this amount to the HOA in an attempt to protect the DOT from extinguishment at the impending foreclosure sale. (*Id.*; Tender Letter, ECF No. 41-4 at 57–58; Check, ECF No. 41-1 at 59.) It is undisputed that the tender was rejected. (*See* Resp. of Tiras 9, ECF No. 44; Resp. of HOA 4, ECF No. 43.)

On August 15, 2013, a foreclosure deed was recorded with Defendant Thunder Properties, Inc. ("Thunder") named as grantee. Despite an appraised value of $75,000, Thunder paid just $5,421.59 at the foreclosure sale. (Appraisal Report, ECF No. 41-1 at 71–73; Foreclosure Deed, ECF No. 41-1 at 65–66.) Thunder also took the foreclosure deed "without covenants or warranty, express or implied." (Foreclosure Deed.) Subsequently, by an assignment

recorded on February 27, 2014, Countrywide Home Loans, Inc. transferred its interest to Plaintiff Bank of New York Mellon. (Assignment, ECF No. 41-1 at 32–33.)

Plaintiff alleges four causes of action in its Complaint: (1) quiet title/declaratory judgment against all Defendants; (2) breach of N.R.S § 116.1113 against the HOA and Tiras; (3) wrongful foreclosure against the HOA and Tiras; and (4) injunctive relief against Thunder. Plaintiff, Tiras, and the HOA have all filed motions summary judgment. (ECF Nos. 41, 39, 40.)

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

## III. ANALYSIS

### A. Tender of the Superpriority Piece of the HOA's Lien

This Court has held that the unconditional pre-foreclosure tender of the superpriority lien amount has the legal effect of extinguishing the superpriority portion of an HOA lien, whether or not the tender is accepted. *See, e.g.*, *U.S. Bank, N.A. v. SFR Investments Pool 1, LLC*, No. 3:15-cv-00241, 2016 WL 4473427, at *6–8 (D. Nev. Aug. 24, 2016) (Jones, J.). Here, there is no genuine dispute that the full superpriority piece was tendered prior to the sale. Plaintiff has adduced evidence that on or about August 9, 2012, Miles Bauer tendered a check to the HOA for $1,980, comprising nine months' worth of common assessments. (*See* Kendis Aff. ¶¶ 5–9, ECF No. 41-1 at 44–46; Owner Ledger, ECF No. 41-1 at 51–55 (indicating monthly assessments of $220); Tender Letter, ECF 41-1 at 57–58; Check, ECF No. 41-1 at 59.) The superpriority piece of an HOA lien does not include collection costs. *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 132 Nev. Adv. Op. 35, 2016 WL 1704199, at *6 (Nev. 2016). Therefore, the uncontroverted evidence indicates that Miles Bauer tendered the full amount of the HOA's superpriority lien.

In addition, the check tendered by Miles Bauer was an unconditional order to pay money; that is part of the very definition of a check under the law of commercial paper. *See* Nev. Rev. Stat. § 104.3104. The language Miles Bauer included with its cashier's check states that Miles Bauer, and presumably its client, will understand endorsement of the check to mean they have fulfilled their obligations. (Tender Letter, ECF 41-1 at 57–58.) This language simply delineated how the tenderer would interpret the actions of the recipient. It did not require the HOA to take any action or waive any rights. And it did not depend on any uncertain event or contingency. Thus, a reasonable jury could not find the tender was conditional. In reality, the check was an unconditional order to pay money, permitting the HOA to immediately demand and receive

money from the draftee in the amount indicated on the check without any further action or consent by Miles Bauer or Bank of America.

Defendants argue in opposition that the unpublished Nevada Supreme Court case that had previously held that a rejected tender was sufficient to extinguish the superpriority piece of an HOA lien, *see Stone Hollow Avenue Tr. v. Bank of Am., N.A.*, No. 64955, 2016 WL 4543202 (Nev. Aug. 11, 2016), has been vacated and remanded upon en banc reconsideration, *see Stone Hollow Avenue Tr. v. Bank of Am., N.A.*, No. 64955, (Nev. Dec. 21, 2016). But the Nevada Supreme Court did not rule that a wrongfully rejected tender did not extinguish a corresponding lien. *See id.* Rather, it found that the district court had erred in determining whether there remained a genuine issue of material fact on the issue of wrongful rejection of the tender in that case. *See id.* Had the Court believed that a wrongfully rejected tender necessarily did not extinguish a corresponding lien, it would not have vacated and remanded for further fact-finding on that issue but simply reversed with instructions. The remand necessarily implied the Nevada Supreme Court's position that a wrongfully rejected tender extinguishes a corresponding superpriority piece of an HOA lien. Even ignoring the entire *Stone Hollow* case, the heavy weight of authority as cited by this Court in previous cases, *see, e.g.*, *U.S. Bank, N.A. v. SFR Investments Pool 1, LLC*, 2016 WL 4473427, at *6–8, indicates that a wrongfully rejected tender is effective to immediately extinguish a corresponding lien.

### B. Thunder's BFP Status

Thunder argues it is a bona fide purchaser for value without notice ("BPF"), and that the Court should therefore rule that it took title free of the DOT. (Resp. of Thunder 28–29, ECF No. 56.) A BFP is a person who pays money for real property before obtaining notice of an earlier interest in the property. 5 Tiffany Real Property § 1262 & n.39.50 (3rd ed. 2015). The traditional common law rule of competing interests in real property is "first in time, first in right." 11

Thomas, *supra*, § 92.03, at 97 (citing Ralph W. Aigler, The Operation of the Recording Acts, 22 Mich. L. Rev. 405, 406 (1924) ("first in time was first in right because there was nothing left for the second transferee")). The equity courts created exceptions to the traditional "first in time, first in right" rule. *Id.* § 92.03, at 98. Under the common law, an earlier claim had priority over a later claim if both claims were legal claims (as opposed to equitable claims). *Id.* § 92.03, at 97. The same was true if both claims were equitable. *Id.* BFP status only mattered under the common law where the purported BFP had a legal claim and a competing earlier claim to the property was purely equitable. *Id.*

Today, the difference between legal and equitable claims does not matter as much as the policies behind recognizing BFP status (or not) in particular circumstances, and BFP-type exceptions to the common law rule of priority are governed by recording statutes, in any case. *Id.* § 92.03, at 98–99. Recording statutes are categorized as "race," "notice," or "race-notice" statutes. *Id.* § 92.08, at 158. Under notice statutes, an exception to the traditional "first in time" rule is codified for those who give value for an interest in land "without notice or knowledge" of an earlier competing interest. *Id.* § 92.08(b). Race-notice statutes additionally require the later grantee to record his interest before the earlier grantee. *Id.* § 92.08(c). Where notice matters, as under notice and race-notice statutes, one who takes title without warranty can be found to have had inquiry notice of prior unrecorded interests (and therefore not qualify as a BFP), because a grantor's refusal to issue standard warranties of title should put a reasonable and prudent person on notice of potential competing interests. *Id.* § 92.09(c)(3)(C), at 191.

Nevada has a race-notice statute. *See* Nev. Rev. Stat. § 111.325 ("Every conveyance of real property within this State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real property, or any portion thereof, where his or her own

conveyance shall be first duly recorded."). In other words, a later-obtained interest can prevail over an earlier-obtained interest in Nevada where the later purchaser has no knowledge of the previous interest and records his interest first. It is not genuinely disputed that neither of these elements is satisfied here. Thunder had constructive notice of the DOT at the time it acquired its interest in the Property because the DOT had been recorded, *see* Nev. Rev. Stat. § 111.315, and the foreclosure deed was of course not recorded before the DOT.

The remaining question is whether Thunder is a BFP as against the fact that the superpriority piece of the HOA's lien had been extinguished prior to the sale. That is, Thunder argues that because it had no notice of any pre-sale dispute between Plaintiff, Bank of America, Tiras, and the HOA, the legal effects of Miles Bauer's tender should not be imposed against Thunder. The general BFP rule in Nevada is:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). Even assuming the issue were whether Thunder had notice not only of the DOT but also of the legal possibility that the DOT might survive the HOA foreclosure sale (whether due to the pre-sale tender of the superpriority piece in particular or the legal possibility that the sale might not extinguish the DOT under N.R.S § 116.3116 in general), Thunder was not an innocent purchaser. Thunder was on inquiry notice of the continuing vitality of the DOT, especially considering that the sale price was a small fraction of the value of the Property and it knew the winning bidder was to take a foreclosure deed without any express or implied covenant or warranty. *See Berge v. Fredericks*, 591 P.2d 246, 249–50 (Nev. 1979); 11 Thomas, *supra*, § 92.09, at 163 ("Persons who knew about or could have discovered the existence of prior adverse claims through reasonable investigations should not be protected."). A

buyer who takes title without warranty does not qualify as a BFP, because a grantor's refusal to issue standard warranties of title puts a reasonable and prudent person on inquiry notice of any competing interests. *See* 11 Thomas, *supra* § 92.09(c)(3)(C), at 191. And any inquiry to Tiras and/or the HOA alone was insufficient as a matter of law. *See id.* (noting that "reliance upon a vendor, or similar person with reason to conceal a prior grantee's interest, does not constitute 'adequate inquiry'"). The law was not clear at the time of the sale that the sale would extinguish the DOT at all, superpriority tender or not, and a reasonable purchaser therefore would have perceived a serious risk that it would not. Thunder cannot be said to be a BFP as against the DOT under these circumstances.

### C. Plaintiff's Claims for Violation of NRS 116.1113 and Wrongful Foreclosure

In its prayer for relief, Plaintiff requests primarily a declaration that Thunder purchased the Property subject to its DOT. The other relief requested—with the exception of the injunctive relief discussed below—is phrased in the alternative. Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's second and third causes of action as moot.

### D. Injunctive Relief

In its fourth cause of action, Plaintiff requests a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests. The Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (ECF No. 41) is GRANTED. Plaintiff shall submit a proposed form of judgment within fourteen days of this order's entry.

IT IS FURTHER ORDERED that the motions for summary judgment (ECF Nos. 38, 40) are DENIED.

IT IS SO ORDERED.

DATED: This 23rd day of May, 2017.

_____
ROBERT C. JONES
United States District Judge